**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o United States Attorney's Office<br>555 Fourth St., N.W.<br>Washington, D.C. 20530<br><br>                    Plaintiff,<br><br>      v.<br><br>$548,906.86 SEIZED ON OR ABOUT<br>AUGUST 15, 2018, FROM BANK OF<br>AMERICA ACCOUNT NO. XXXX4967,<br>HELD IN THE NAME OF<br>MICHAEL BROOKER,<br>                    Defendant. | Civil Action No. |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

*COMES NOW*, plaintiff, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, to bring this verified complaint in a civil action *in rem* to condemn and forfeit the above-listed defendant ("defendant funds"), to the use and benefit of the United States of America in accordance with Supplemental Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). In support of its cause, plaintiff states as follows:

### NATURE OF THE ACTION AND DEFENDANT *IN REM*

1. This is a civil action *in rem* for the forfeiture of the defendant funds to the use and benefit of the plaintiff, the United States. Pursuant to 18 U.S.C. § 981(a)(1)(C), property is subject to civil forfeiture if it is, any property, constituting or derived from proceeds traceable to, *inter alia*, conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. The offense of

conspiracy to commit wire fraud is a "specified unlawful activit[ies]" as defined by 18 U.S.C. § 1956(c)(7) and 18 U.S.C. § 1961(1). Pursuant to 18 U.S.C. § 981(a)(1)(A), property is subject to forfeiture if it is, any property, real or personal, involved in a transaction or attempted transaction in violation of, *inter alia*, engaging in monetary transactions in property derived from a specified unlawful activity, in violation of 18 U.S.C. § 1957.

2. Title 18, U.S.C. § 984 provides that, in any forfeiture action *in rem* in which the subject property is cash [or] funds deposited into a financial institution, the government does not have to identify the specific property involved in the offense that is the basis for the forfeiture; it is no defense that said property has been removed and replaced by identical property; and identical property found in the same account as the property involved in the forfeiture offense are subject to forfeiture. In essence, § 984 allows the government to seize for civil forfeiture identical property found in the same place where the subject property had been kept. However, § 984 does not allow the government to reach back in time for an additional period; a forfeiture action against property not directly traceable to the offense that is the basis for the forfeiture cannot be commenced more than one year from the date of the offense.

## The Defendant *In Rem*

3. The defendant property is five hundred forty-eight thousand, nine hundred and six dollars and eighty-six cents ($548,906.86) in U.S. currency, which federal law enforcement agents seized on or about August 15, 2018, upon the execution of a seizure warrant at Bank of America, N.A. The defendant property is more fully described as follows:

> **$548,906.86 in U.S. Currency seized on or about August 15, 2018, from Bank of America, Account No. XXXX4967, held in the name of Michael Brooker.**

The defendant funds were seized by the Federal Bureau of Investigation ("FBI"), and are in the custody of the United States Marshal's Service and were placed in the Seized Asset Deposit Fund in Washington, DC.   The FBI uses Seizure No. 3920-18-F-0400, and Asset I.D. No. 18-FBI-005799 for the defendant funds.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction of this civil action by virtue of 28 U.S.C. § 1345, because it has been commenced by the United States, and by virtue of 28 U.S.C. § 1355(a), because it is an action for the recovery and enforcement of a forfeiture under an Act of Congress.   Venue is proper in this District because this is a forfeiture action or proceeding by virtue of 28 U.S.C. § 1355(b)(1)(A), because this is a forfeiture action or proceeding brought in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred" and by virtue of 28 U.S.C. § 1395(b)(1), because "a civil proceeding for the forfeiture of property may be prosecuted in the district in which the property is found."   In this matter, there were acts giving rise to the forfeiture that occurred in this District and the defendant property is now, and during the pendency of this action, has been in the jurisdiction of this Court.

5. This civil action *in rem* for forfeiture is governed by 21 U.S.C. § 881, 18 U.S.C. § 983, the Federal Rules of Civil Procedure, and the Supplemental Rules, particularly Rule G.

## PROBABLE CAUSE

### Background

6. The FBI began an investigation into a group of individuals, known and unknown, who conducted fraudulent real estate transactions in the District of Columbia.   Generally, vacant or abandoned properties were targeted and individuals pretended to be the owner of record and

prepared and filed forged deeds with the District of Columbia's Recorder of Deeds transferring the properties.   Next, individuals coordinated the sales of the real properties to buyers and either closed or attempted to close the real estate transactions.   At least one of the purported transfers involved an "assignment of contract."   The goal of the scheme and conspiracy was to gain the proceeds from the real estate sales, causing a loss to the true owners of the real properties, the buyers of the real properties, and the title companies.

7.   An assignment of contract occurs when a seller and buyer have a contract pertaining to the sale of real property, but the buyer ultimately decides that he/she is either no longer interested in the property or cannot perform on the contract and "assigns" the rights to purchase the property to a third party.   The original buyer becomes the "assignor" and the new buyer becomes the "assignee" for the transaction.   This assignment typically increases the actual purchase price and the "assignor" ultimately receives the difference between the first purchase price and the second purchase price as an "assignment fee."

### The Real Property Located on Q Street NW

8.   In July 2018, investigators became aware of a fraudulent deed purporting to transfer real property, which was located on Q Street NW, Washington, D.C ("the Q Street property").

9.   The fraudulent deed was allegedly executed on February 5, 2018, and purported to transfer the Q Street property from the owner, S.S., to Michael Brooker ("Brooker") for $100,000.

10.   The owner of the Q Street property, S.S., did not:

   a.   agree to sell the Q Street property to Brooker;

      b. sign any documents to sell the Q Street property;

      c. sign the February 5, 2018 deed; and

      d. did not receive $100,000 from Brooker or from the alleged sale of the Q Street property.

11. After allegedly acquiring the Q Street property from S.S., Brooker also immediately sold the property to G.F. for $1.3 million.

12. On or about April 12, 2018, Brooker approached a title attorney, Witness One ("W-1"), in Orlando, Florida, regarding the sale of the Q Street property.

13. Brooker told W-1 the following:

      a. that Brooker had acquired the Q Street property for approximately $100,000;

      b. that the deed transferring ownership from S.S. to Brooker had not yet been recorded;

      c. that Brooker wanted to sell the property;

      d. that both the sale of the Q Street property to Brooker and Brooker's sale of the property to the buyer, G.F. would need to be conducted simultaneously; and

      e. that Brooker planned to sell the property to the buyer, G. F., through an assignor.

14. W-1 referred Brooker's Q Street transactions to W-1's underwriting title company, Title Company-1. Title Company-1 is a national title company with locations throughout the United States.

15. Title Company-1's Akron, Ohio office processed the transactions and conducted the Q Street property settlements.

16. Brooker had possession of the original deed purporting to transfer ownership of the Q Street property from S.S. to Brooker.  The original copy of the purported deed transferring the property to Brooker was mailed to Title Company-1.

17. The signatures on the deed were notarized by a notary, S.F., in North Carolina.

18. Brooker also provided to Title Company-1, via email, a copy of a contract dated February 5, 2018, purportedly between S.S. and Brooker, for the sale of the Q Street property for $100,000.

19. The real estate transactions for Brooker's alleged sale of the Q Street property was structured with multiple assignments of contract.

20. On or about February 6, 2018, Brooker contracted to sell the Q Street property to a trust ("Trust-1") for $575,000.

21. Trust-1 is a trust controlled by T.S.

22. Title Company-1's settlement file contained an April 2018 Assignment of Contract between Brooker as the "seller" and Trust-1 as the "buyer" and also referred to it as the "assignor."  According to the Assignment of Contract, Trust-1 assigned all rights for the purchase of the Q Street property to "assignee," Business Entity-1.  T.S. signed on behalf of Trust-1 and N.S. signed on behalf of Business Entity-1.

23. Business Entity-1 contracted to pay $1,050,000 for the purchase of the Q Street property.  Of that purchase price, Brooker was to receive $575,000, and Trust-1 was to receive $475,000 as the assignment fee.

24. Title Company-1's settlement file also contained a second Assignment of Contract document between Business Entity-1 and Business Entity-2.

25. In the second Assignment of Contract document, Business Entity-1 assigned the contract for the Q Street property to Business Entity-2.  Thereby, Business Entity-1 became an "assignor" and Business Entity-2, the new "assignee."  Pursuant to the second Assignment of Contract, dated April 13, 2018, Business Entity-2 was to pay $1,300,000 for the Q Street property.

26. The second Assignment of Contract was allegedly signed by N.S. on behalf of Business Entity-1, and by G.F. on behalf of Business Entity-2.

27. G.F. is the principal for Business Entity-1 and has a 90 percent interest Business Entity-1.  N.S. has 10 percent interest in Business Entity-1.

28. G.F. is also the principal for Business Entity-2, the end-buyer in the Q Street property.

29. Title Company-1 asked for and received additional documentation from Brooker, T.S. and other unknown individuals related to the transactions.

30. Title Company-1 attempted to locate notary S.F. through the regulating authority for notaries in North Carolina, but was not able to contact S.F. using the telephone number provided by the State.

31. Brooker then provided Title Company-1 with a telephone number, email address, and mailing address for S.F.

32. Title Company-1 also requested that Brooker provide contact information for the Q Street property owner, S.S.

33. Title Company-1 received an email from T.S. containing a purported email address and telephone number for the owner of the Q Street property, S.S.

34. Title Company-1 communicated with the purported S.S. using the email address provided by T.S. and requested that S.S. sign additional documents.  Title Company-1 also left a voicemail message at the number provided by T.S. for S.S. giving an explanation and instructions about what S.S. needed to provide in order for the real estate transfer to move forward.

35. Title Company-1 also made contact with S.F. and requested that S.F. notarize additional documents purportedly signed by S.S. attesting to Brooker's claims related to the Q Street property.

36. S.F. confirmed the email address Brooker had provided to Title Company-1 and agreed to assist and notarize additional documents purportedly signed by S.S.

37. Title Company-1 emailed the required documents to S.F.  These documents included at least two affidavits and a settlement statement as explained below.  The executed documents were returned via mail to Title Company-1.

38. S.F. also provided to Title Company-1 a copy of a false Washington, D.C. driver's license for S.S. via email from the email address belonging to S.F.

39. Title Company-1's settlement file contains an "Affidavit" dated May 11, 2018, purportedly signed by S.S. and notarized by S.F.

40. The May 11, 2018 Affidavit attested that Brooker paid S.S. $100,000 for the Q Street property.  In addition, the Affidavit claimed that S.S. understood that Brooker was selling the Q Street property to Trust-1, but that the contract was assigned to Business Entity-1.

41.   The real S.S. did not receive $100,000 from Brooker for the Q Street property.

42.   The real S.S. did not sign the Affidavit, nor make hand-written corrections to the document.

43.   Title Company-1's settlement file contained a second "Affidavit" dated May 22, 2018.

44.   The May 22, 2018, "Affidavit" also purports to be an attestation by S.S., and contains similar information, except the Affidavit indicates that the assignment was to Business Entity-2.  The second "Affidavit" was allegedly signed by S.S.   S.F. notarized a blank copy of the May 22, 2018 Affidavit (with no signatures) at the direction of Brooker and then sent the document to Brooker via email.

45.   The real S.S. did not sign the second Affidavit.

46.   Title Company-1 ultimately conducted the settlement of the transfer of the Q Street property from S.S. to Brooker.

47.   The "Final Closing Statement" for the alleged transfer of the Q Street property from S.S. to BROOKER for $100,000 was purportedly signed by Brooker and S.S. and notarized by S.F.

48.   The real S.S. did not sign the "Final Closing Statement."

49.   A Final Closing Statement dated June 1, 2018, listed the purchase price of the Q Street property at $1.3 million and indicated that an assignment fee of $480,000 was to be paid to Trust-1.  Business Entity-2, or G.F., was required to pay $299,545.87, and a financing company was to pay $1,040,000 at closing.   Minus taxes and fees, the net proceeds to Brooker as the "seller," totaled $661,815.71.

50.     On or about May 30, 2018, Brooker signed settlement documents using a mobile notary in Ocoee, Florida selling the Q Street property to G.F., through the assignees, T.S and Business Entity-1.   Brooker used his legitimate Maryland driver's license as identification for the settlement.   Following the execution of these documents, the mobile notary transported the documents to the FedEx office located at the Orlando, Florida airport and sent the documents via FedEx to Title Company-1 in Akron, Ohio.

51.     On or about May 30, 2018, G.F. signed settlement documents using a mobile notary at a FedEx office located in Silver Spring, Maryland.   Following the execution of the settlement documents, G.F. sent the documents via FedEx to Title Company-1 in Akron, Ohio.

52.     After receiving the executed documents, Title Company-1 mailed the original deed transferring the property from S.S. to Brooker, the original warranty deed transferring the property from Brooker to G.F. (and Business Entity-1), and the original deed of trust pertaining to the financing received for the transaction to Witness Four ("W-2") in Silver Spring, Maryland.

53.     W-2 runs a title abstract business and was hired by Title Company-1 to conduct the title search for the Q Street property and to assist Title Company-1 with recording the transactions.   W-2 hand-carried the deeds to the Washington, D.C. Recorder of Deeds Office to be recorded.   The deeds were recorded on or about June 11, 2018.   Following recordation, the original deeds were mailed from the recorder's office in the District of Columbia to Title Company-1 in Akron, Ohio.

**The Real Estate Sale Proceeds Relating to the Q Street**

54. On or about June 4, 2018, Title Company-1 wire transferred $661,815.71 from its Citibank account into Brooker's Bank of America ("BOA") account no. xxxx4967 and wired $480,000 to Navy Federal Credit Union ("NFCU") account no. xxxx9247, controlled by T.S.

55. On June 4, 2018, before Brooker's BOA account received the sale proceeds related to the Q Street property, the balance of the account was $163,581.74.

56. On or about June 8, 2018, Brooker wired $181,785.71, from his BOA account no. xxxx4967 to NFCU account no. xxxx9247, controlled by T.S.

57. On June 8, 2018, T.S transferred approximately $250,000 from NFCU account No. xxxx9247 to another account, NFCU account no. xxxx1091, which is held in the name of T.S.   Also on June 8, 2018, from his NFCU account no. xxxx1091, T.S. transferred $250,000 to a TD Bank ("TD Bank") account no. xxxx8957 in the name of Business Entity-1.

58. G.F. is the sole signer on the TD Bank account no. xxxx8957.

59. On or about June 14, 2018, Brooker sent two separate wires from his BOA account no. xxxx4967 to a JP Morgan Chase Bank account held in his name – one wire was for $450,000, and the other wire was for $30,000.   On or about June 25, 2018 and June 26, 2018, Brooker requested the recall of the two wires to his BOA account, which resulted in all but $50 of the total amount being returned to Brooker's BOA account no. xxxx4967.

60. As of August 1, 2018, Brooker had withdrawn approximately $94,981.14 from his BOA account no. xxxx4967.

**Seizure Warrant**

61. On or about August 15, 2018, the FBI served a seizure warrant authorized by Magistrate G. Michael Harvey of the United States District Court for the District of Columbia, upon BOA. The seizure warrant required law enforcement to seize "any and all funds in Bank of America Account No. xxxx4967, held in the name of Michael James Brooker." The defendant $548,906.86, reflects the amount of funds seized by the FBI from BOA account xxxx4967.

**COUNT I**

62. All statements and averments made in paragraphs 1-61 are re-alleged and incorporated, herein, by reference.

63. As described above, the defendant funds are any property, real or personal, which constitute or are derived from proceeds traceable to the offense of conspiracy to commit wire fraud and/or mail fraud, in violation of 18 U.S.C. § 1349.

64. By reason of the above-described facts, the defendant funds are subject to forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C).

**COUNT II**

65. All statements and averments made in paragraphs 1-61 are re-alleged and incorporated, herein, by reference.

66. As described above, the defendant funds are any property, real or personal, which constitute or are derived from proceeds traceable to the offense of mail fraud, in violation of 18 U.S.C. § 1341.

67. By reason of the above-described facts, the defendant funds are subject to

forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C).

## **COUNT III**

68. All statements and averments made in paragraphs 1-61 are re-alleged and incorporated, herein, by reference.

69. As described above, the defendant funds are property, real or personal, involved in a conspiracy to commit a violation of sections 1956 or 1957 of Title 18, or any property traceable to such property.

70. By reason of the above-described facts, the defendant funds are subject to forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 981(a)(1)(A).

## **COUNT IV**

71. All statements and averments made in paragraphs 1-61 are re-alleged and incorporated, herein, by reference.

72. As described above, the defendant funds are property, real or personal, involved in a transaction or attempted transaction in violation of section 1957 of Title 18, or any property traceable to such property.

73. By reason of the above-described facts, the defendant funds are subject to forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 981(a)(1)(A).

74. As such, the defendant funds are subject to forfeiture in the United States.

**WHEREFORE**, the plaintiff prays that, as to the above-referenced defendant funds, due process issue according to law; that, pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed and defendant funds be condemned as forfeited to the United States of America; and for such other and further relief as this Court may deem just, necessary and proper.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
District of Columbia

By: _____
Diane G. Lucas
Assistant U.S. Attorney
D.C. Bar No. 443610
555 4th Street, N.W.
Washington, D.C.  20530
(202) 252-7724
Diane.Lucas@usdoj.gov

## VERIFICATION

I, Special Agent Michelle Rankin, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me or furnished to me by law enforcement agents and that everything contained in this Complaint is true and correct.

Executed on this 27th day of March, 2019.

*Michelle L. Rankin*
Special Agent Michelle L. Rankin
Federal Bureau of Investigation

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>         **Plaintiff,** )<br>)<br>v. )<br>)<br>)<br>**$548,906.86 SEIZED ON OR ABOUT** )<br>**AUGUST 15, 2018, FROM BANK OF** )<br>**AMERICA ACCOUNT NO. XXXX4967,** )<br>**HELD IN THE NAME OF** )<br>**MICHAEL BROOKER,** )<br>)<br>         **Defendant.** )<br>_____) | Civil Action No. _____ |

## WARRANT FOR ARREST *IN REM*

TO: THE UNITED STATES MARSHAL'S SERVICE AND/OR ANY OTHER DULY AUTHORIZED LAW ENFORCEMENT OFFICER:

    WHEREAS a Verified Complaint for Forfeiture *In Rem* has been filed in the United States District Court for the District of Columbia, on the 1st day of April, 2019, alleging that the defendant property is subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. §§ 981;

    YOU ARE, THEREFORE, HEREBY COMMANDED to serve the defendant property, thus bringing, within the jurisdiction of the Court, the said defendant property, more fully described as:

> **$548,906.86 in U.S. Currency seized on or about August 15, 2018, from Bank of America, Account No. XXXX4967, held in the name of Michael Brooker.**

    YOU ARE FURTHER COMMANDED to provide notice of this action to all persons thought to have an interest in or claim against the defendant property by serving upon such persons a copy of this warrant and the Verified Complaint *In Rem*, in a manner consistent with the principles of service of process of an action *in rem* under the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure.

YOU ARE FURTHER COMMANDED, promptly after execution of this process, to file the same in this Court with your return thereon, identifying the individuals upon whom copies were served and the manner employed.

Dated: _____
Clerk of the Court

By: _____
Deputy Clerk

# CIVIL COVER SHEET

JS-44 (Rev. 5/12 DC)

## I. (a) PLAINTIFFS

United States of America
c/o U.S. Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

## DEFENDANTS

$548,906.86 SEIZED ON OR ABOUT AUGUST 15, 2018, FROM BANK OF AMERICA ACCOUNT NO. XXXX4967, HELD IN THE NAME OF MICHAEL BROOKER

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

## (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Diane G. Lucas (202) 252-7724
Assistant United States Attorney
555 4th Street, N.W., 5th Floor
Washington, DC 20530

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (x) 1 U.S. Government Plaintiff
- ( ) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in This State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and **one** in a corresponding Nature of Suit)

### ( ) A. Antitrust
- [ ] 410 Antitrust

### ( ) B. Personal Injury/Malpractice
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Product Liability

### ( ) C. Administrative Agency Review
- [ ] 151 Medicare Act

**Social Security**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**Other Statutes**
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

### ( ) D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### (x) E. General Civil (Other)   OR   ( ) F. Pro Se General Civil

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 27 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Conditions
- [ ] 560 Civil Detainee – Conditions of Confinement

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [x] 690 Other

**Other Statutes**
- [ ] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions
- [ ] 470 Racketeer Influenced & Corrupt Organization

- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding   ○ 2 Remand from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi-district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
18 U.S.C. Section 981 - forfeiture of property constituting or derived from proceeds traceable to money laundering.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23   **DEMAND $**   **JURY DEMAND:**   Check YES only if demanded in complaint   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form

**DATE:** 04/01/2019   **SIGNATURE OF ATTORNEY OF RECORD** /s/ Diane G. Lucas

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

   I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

   III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

   IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of the case.

   VI.   CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

   VIII.   RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should endure the accuracy of the information provided prior to signing the form.